## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:23-cv-01116-SDM-CPT

DENNIS SPITLER, on behalf of himself and others similarly situated,

        Plaintiff,

v.

BALDWIN RISK PARTNERS, LLC,

        Defendant/Third Party Plaintiff,

v.

QUOTELAB, LLC d/b/a MEDIAALPHA and DIGITAL MEDIA SOLUTIONS, INC.

        Third Party Defendants.
_____/

## THIRD-PARTY COMPLAINT

Defendant BRP Insurance III, LLC d/b/a National Health Plans & Benefits Agency, LLC incorrectly named as Baldwin Risk Partners, LLC ("NHPBA"), pursuant to Federal Rule of Civil Procedure 14, hereby files this Third-Party Complaint against Third-Party Defendants, QuoteLab, LLC d/b/a MediaAlpha and Digital Media Solutions, Inc., and states as follows:

### THE PARTIES

1. Defendant/Third-Party Plaintiff NHPBA is a corporation incorporated and existing under the laws of the State of Florida with its principal address of 4211 W. Boy Scout Blvd., Suite 800, Tampa, FL 33607.

2. Third-Party Defendant QuoteLab, LLC d/b/a MediaAlpha ("MediaAlpha") is a corporation incorporated and existing under the laws of the State of Delaware with a principal address of 700 S. Flower Street, Suite 640, Los Angeles, CA 90017.

3. Third-Party Defendant Digital Media Solutions ("DMS") is a corporation incorporated and existing under the laws of the State of Florida with its principal address of 255 Giralda Ave., 5th Floor, Miami, FL 33134.

## JURISDICTION AND VENUE

4. This Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367 because it is related to the TCPA claims which form the basis of Plaintiffs' claims and over which the Court already has jurisdiction in that they are part of the same case or controversy,.

5. This Court has jurisdiction over DMS because it is a resident of Florida and is alleged to have made one or more calls to Plaintiff Dennis Spitler in this District.

6. This Court has jurisdiction over MediaAlpha because it entered into a contract with NHPBA in this District that is the subject of Spitler's Complaint.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district (NHPBA) and a substantial part of the events or omissions giving rise to the litigation occurred in this District.

## FACTUAL BACKGROUND

### A.   Alleged Calls to Spitler

8.   Upon information and belief, Spitler visited the website www.insurance-offer.com on August 8, 2022, at 9:30 pm and provided consent to be contacted via telephone by the companies listed on the website (the "Lead").

9.   DMS was disclosed as one of the companies to whom Spitler consented to receive calls from on the website.

10.   Plaintiff Dennis Spitler has alleged that DMS called him on January 18, 2023.

11.   DMS sold the Lead to an entity named SK Consulting who immediately sold the lead to RateQuote.

12.   RateQuote immediately placed the Lead on MediaAlpha's platform which purports to sell TCPA compliant insurance leads to companies such as NHPBA.

13.   MediaAlpha's platform is designed to obtain bids from companies like NHPBA who are interested in buying legitimate TCPA compliant leads which it uses to sell its product. Which MediaAlpha customer ultimately receives the lead is based on a number of factors set by MediaAlpha and its contracts with buyers and sellers, including which customer is the highest bidder

14. NHPBA was the highest bidder for the Lead and so, the Lead was transferred to NHPBA. It was only *after* DMS placed to call the Spitler that NHPBA bid on – and won - the Lead from MediaAlpha's platform. The Lead could have been sold to any number of other buyers through MediaAlpha's platform if one of those buyers had been the highest bidder.

15. NHPBA did not initiate any calls to Spitler.

16. NHPBA was not aware of Spitler's existence prior to the call being made or at the time DMS allegedly called him.

17. At all material times, the Third-Party Defendants and their agents were obligated to comply with all applicable laws when contacting consumers.

18. Spitler, individually and on behalf of all others similarly situated, brought the underlying action asserting claims against NHPBA alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"). *See* Class Action Complaint (ECF No. 1) ("Complaint").

19. Spitler's Complaint alleges that NHPBA violated the TCPA and FTSA by making unsolicited telephone calls to Spitler using a pre-recorded voice message. NHPBA denies these allegations.

20. NHPBA did not make any calls to Spitler. Rather, NHPBA purchased a "warm lead" from Media Alpha after being assured that the third-parties purportedly obtained consent and initiated contact with Spitler.

21. Accordingly, to the extent that NHPBA is found to be liable to Spitler for damages arising from any of the claims asserted in the Complaint, which are denied, Third-Party Defendants are liable, in whole or in part, for such damages.

**B.     NHPBA's Contract with MediaAlpha**.

22. On or about July 3, 2019, MediaAlpha entered into a Lead Purchase Agreement with NHPBA. A true and correct copy of the Lead Purchase Agreement is attached as Exhibit A.

23. Under the terms of the Lead Purchase Agreement, MediaAlpha agreed that it, as well as any third parties who collect leads on MediaAlpha's behalf, would obtain ***prior express written consent*** for NHPBA to contact the consumers identified in any lead using automated technology and prerecorded messages. Ex. A, ¶ 4.

24. Pursuant to Paragraph 10(b) of the Lead Purchase Agreement, MediaAlpha agreed to "indemnify and hold [NHPBA], and its subsidiaries, and their respective officers, directors, employees, successors and permitted assigns, harmless from and against any Losses arising out of, relating to or incurred as a result of: (i) any failure of MediaAlpha to perform its obligations under this Agreement; (ii) the breach or inaccuracy of a representation or warranty made by MediaAlpha under this Agreement; (iii) any failure by MediaAlpha (or a third party who collects lead information on behalf of

MediaAlpha) to comply with applicable law; (iv) the negligence of MediaAlpha in the performance of its obligations under this Agreement; and/or (v) the infringement or misappropriation of any patent, copyright, trademark, trade secret, or other proprietary right of any third party in the performance of its obligations thereunder." Ex. A, ¶ 10(b).

25. The Lead Purchase Agreement defines "Losses" as "all out-of-pocket costs, fees, losses, damages, claims and expenses, including outside attorneys' fees, disbursements and court costs, incurred by a party." Ex. A, ¶ 10(a).

26. NHPBA did not control the time, manner, or means of how MediaAlpha obtained TCPA compliant leads to offer for sale to NHPBA or MediaAlpha's other customers.

27. NHPBA did not have the right to control the time, manner, or means of how MediaAlpha obtained TCPA compliant leads to offer for sale to NHPBA or MediaAlpha's other customers.

28. NHPBA did not instruct MediaAlpha on how it went about obtaining TCPA compliant leads.

29. NHPBA did not have the right to instruct MediaAlpha on how it went about obtaining TCPA compliant leads.

30. NHPBA did not hire MediaAlpha to make outbound calls.

31. NHPBA has not provided MediaAlpha with calling scripts or otherwise provide any instructions on what MediaAlpha should say on outbound calls.

32. NHPBA does not allow MediaAlpha to access information or to enter customer information into NHPBA's systems.

**C. DMS Was Not Acting as NHPBA's Agent When DMS Called Spitler.**

33. NHPBA does not have a contractual relationship with DMS.

34. NHPBA was unaware aware that DMS was the entity that had called Spitler prior to this lawsuit.

35. NHPBA did not direct DMS to place a call to Spitler.

36. DMS was not calling on behalf of NHPBA when it called Spitler or any other consumer.

37. NHPBA had no ability to control the circumstances of any call DMS made to Spitler in any way.

38. NHPBA did not hire or retain DMS to make outbound calls on NHPBA's behalf.

39. NHPBA does not have any right or ability to control the time, manner or means of how DMS makes outbound calls.

40. NHPBA did not control the time, manner or means of how DMS made outbound calls.

41. NHPBA does not provide any instructions to DMS on how to make outbound calls.

42. NHPBA has no right to provide any instructions to DMS on how it makes outbound calls.

43. NHPBA does not provide any instructions to DMS as to who should be called.

44. NHPBA has no right to provide any instructions to DMS on how it makes outbound calls.

45. NHPBA has not provided DMS with calling scripts or otherwise provide any instructions on what DMS should say on outbound calls.

46. NHPBA does not allow DMS to access its information or to enter customer information into NHPBA's systems.

47. NHPBA has not authorize DMS to use NHPBA's trade names, trademarks, or service marks.

48. Pursuant to their contractual and common law obligations to NHPBA, Third-Party Defendants have a duty to indemnify NHPBA for the claims made against NHPBA in this lawsuit and to pay any judgment against NHBPA arising from their respective conduct, including Spitler's claim that the telephone calls he received violated the TCPA and FTSA.

## FIRST CAUSE OF ACTION
**Contractual Indemnity against MediaAlpha**

49. NHPBA incorporates the foregoing allegations as if fully set forth herein.

50. By way of the Complaint, Spitler alleges that NHPBA violated the TCPA and FTSA.

51. NHPBA is not responsible for any alleged violation of the TCPA and FTSA.

52. MediaAlpha agreed that it would obtain prior express written consent from consumers for NHPBA to contact those consumers using automated technology and prerecorded messages.

53. Spitler has alleged that he did not provide prior express written consent to receive telemarketing calls from NHPBA.

54. Spitler's claims are premised on the implied allegation that MediaAlpha violated its obligations, representations and covenants in the Lead Purchase Agreement.

55. NHPBA has incurred and continues to incur losses arising from Plaintiff's claims, for which MediaAlpha is responsible.

56. Pursuant to the Lead Purchase Agreement between NHPBA and MediaAlpha, NHPBA is entitled to be defended and indemnified by

MediaAlpha as well as reimbursed for all fees and expenses NHPBA has incurred and will incur in the course of defending against this action.

57. Pursuant to the Lead Purchase Agreement, to the extent that NHPBA is found liable to Plaintiff for damages arising from any of the claims asserted in the Complaint, which NHPBA denies, MediaAlpha is liable to NHPBA for such damages in their entirety.

58. NHPBA placed MediaAlpha on notice and requested indemnification pursuant to the relevant contract between the parties. Media Alpha has refused indemnify NHPBA to date.

## SECOND CAUSE OF ACTION
### Contribution against DMS

59. NHPBA incorporates the foregoing allegations as if fully set forth herein.

60. Given that DMS placed the call to Spitler that is the subject of Spitler's Complaint, Spitler's claimed damages, if any, are necessarily attributable to DMS' actions as the party that initiated the telephone calls.

61. NHPBA neither caused nor contributed to Spitler's claimed damages, if any, and is without fault as to such alleged damages.

62. DMS was not acting on NHPBA's behalf when DMS called Spitler.

63. NHPBA had no knowledge of or control over the circumstances surrounding DMS' alleged call(s) to Spitler.

64.   At the time DMS called Spitler, NHBPA had no idea that DMS would sell the Lead to SK Consulting who would sell the Lead to RateQuote who in turn would sell the Lead to MediaAlpha who would then sell the Lead to NHPBA as the highest bidder at the time.

65.   NHPBA is, therefore, entitled to contribution from DMS as the party that allegedly made the call to Spitler without his prior express written consent and DMS is responsible for any losses suffered by NHPBA, including outside counsel attorney's fees and costs.

WHEREFORE, NHPBA respectfully requests that this Court enter an order declaring that NHPBA is entitled to be fully indemnified by Third-Party Defendants, QuoteLab, LLC d/b/a MediaAlpha and Digital Media Solutions, Inc., and that any judgment entered in this litigation for Spitler be paid by Digital Media Solutions, Inc. or MediaAlpha.

Dated:  October 18, 2023            **LOCKE LORD LLP**
777 South Flagler Drive
Suite 215 East Tower
West Palm Beach, Florida 33401
Tel.:  (561) 833-7700
Fax:  (561) 655-8719


By: */s/ Steven J. Brotman*
    Steven J. Brotman
    Florida Bar No. 85750
    steven.brotman@lockelord.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I also hereby certify that on October 18, 2023 a true copy of the foregoing was served on counsel of record via the court's electronic filing system and via email to:

Avi R. Kaufman, Esq.
Rachel E. Kaufman, Esq.
**KAUFMAN P.A.**
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
kaufman@kaufmanpa.com
rachel@kaufmanpa.com
*Counsel for Plaintiff*

/s/ *Steven J. Brotman*
Steven J. Brotman

134873274